133 So.2d 513

**Jerry Wayne WHITEHEAD**

v.

**STATE.**

**8 Div. 778.**

Court of Appeals of Alabama.

Oct. 3, 1961.

Kenneth R. Cain, Markstein, Christian & Cain, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., John G. Bookout, Asst. Atty. Gen., and Herbert D. Schaefer, Montgomery, Research Legal Aid, for the State.

PRICE, Judge.

Appellant was convicted of the offense of grand larceny.

The State's evidence shows that Ray Burgess, on the night of November 1, 1959, discovered that a 1958 Dodge automobile was missing from his used car lot in the City of Guntersville. He notified police and shortly thereafter was informed by them that the automobile had been found. The car, parked behind the Arva Motel, was out of gasoline, and a boy named Ashley was sitting in it.

Mr. Burgess testified on cross examination that entry into the office was made by forcing a window. The keys to the car were missing from the box in which they were kept.

There was testimony to the effect that defendant admitted to the officers that he broke into the office and took the keys; that he drove the automobile for a while and then turned it over to the boy found in the car by police.

Testimony presented in defendant's behalf tended to show that on the afternoon in question he had come from Birmingham to Guntersville with his sister and brother-in-law, Mr. and Mrs. Bobby Gattis, for a short visit with his family; that about 7:00 p. m. he left his sister's home to buy cigarettes, and returned around 7:30. Shortly before 8:00 he left for the return trip to Birmingham. A few minutes later Mr. Gattis came back to report that defendant had been arrested.

The evidence presented questions for the jury's consideration as to defendant's guilt and was ample in its tendencies to sustain the conviction. The court properly denied the motion, made at the close of the State's case, to exclude the evidence on the ground that defendant was not shown to have been connected with the theft of the automobile.

During the cross examination of defendant's sister, Mrs. Sue Peacock, the following occurred.

"Q. (by the solicitor) All right. Where do your sister and her husband and two children live now? A. Birmingham.

"Q. Are they here today? A. No, sir.

"Mr. Cain: We object. Withdraw it.

"The Court: Overrule.

"Mr. Cain: I withdraw it."

Later in the recross examination of this same witness these questions were asked:

"Q. One thing to be sure I understood you correctly a little while ago. The sister and brother-in-law you say the defendant was with on that occasion and had been with for two or three days still live in Birmingham?

"A. Yes, sir.

"Q. They are not here today?

"Mr. Cain: We object to that. You instructed him once on that. I move for a mistrial again.

"The Court: Overrule.

"Mr. Cain: All right. We except."

The solicitor also cross examined defendant's father as follows:

"Q. Mr. Whitehead, does this daughter of yours, I believe you said her name was Zona?

"A. Yes, sir.

"Q. Does she still live in Birmingham?

"A. Yes, sir.

"Q. Have you seen her today?

"A. No, sir.

"Mr. Cain: We object. That's improper. Not part of the res gestae whether he has seen that girl or not.

"The Court: Overrule.

"Mr. Cain: We except.

"Q. She and her husband still living together?

"A. Yes, sir.

"Q. Have you seen him today?

"A. No, sir.

"Mr. Cain: Same objection.

"The Court: Overrule."

Appellant contends the court erred in overruling his objections to the questions propounded to these witnesses because such questions were prejudicial to him as tending to create a presumption against him because of his failure to produce his sister and brother-in-law as witnesses in his behalf.

■ The State insists the questions were not, as contended by appellant, references by the solicitor to accused's failure to produce his sister and brother-in-law as witnesses, but, even if they are to be so considered, they were not improper in that the relationship of accused to the parties referred to was such that they were accessible to accused alone and could not be said to be equally accessible as witnesses to the State.

■ We think the propriety of the questions is not before us for consideration. It is a well established rule that an objection to a question after it is answered comes too late. See 6A Ala.Dig., Criminal Law, ☞693 for citation of authority.

■ It will be noted that in every instance but one the question had been asked and answer made before objection was interposed. Furthermore, objection to the first question to Mrs. Peacock was withdrawn. Thereafter the question to the witness was repeated and objection timely interposed, although no grounds of objection were stated in support thereof. Counsel for appellant stated to the court: "You instructed him once on that. I move for a mistrial again." No such instruction appears in the record.

■ Mrs. Peacock did not answer the question the second time it was asked. However, the admission of testimony, if error, is harmless, where the same witness has previously testified to the same facts without objection. Crenshaw v. State, 205 Ala. 256, 87 So. 328.

We think the solicitor should not be charged with bad faith in repeating a question to a witness after defense counsel has withdrawn his objection to an identical question propounded to the same witness.

It is next insisted that contradictions and discrepancies appear in the testimony of the Assistant Police Chief of Guntersville as to whether or not he was present at the time of defendant's arrest, and because of such contradictory statements the case should be reversed.

■■ The credibility of a witness's testimony is for the jury, and, if contradictory

statements are made, it is for the jury to determine the weight to be given such testimony. See 6A Ala.Dig., Criminal Law, ☞742(1), for cases.

We find no reversible error in the record. The judgment of the circuit court is affirmed.

Affirmed.